IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DOUGLAS DELLINGER, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:15cv00233 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| HAROLD CLARKE, *et al.*, | ) | United States District Judge |
|     Defendants. | ) | |

**MEMORANDUM OPINION**

Douglas Dellinger, a Virginia inmate proceeding *pro se*, filed a civil action pursuant to 42 U.S.C. § 1983 in May 2015, alleging that the defendants violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq*.[1] Defendants filed a motion for summary judgment acknowledging that plaintiff alleged violations of his rights under RLUIPA, and Dellinger responded thereto, making this matter ripe for disposition. For the reasons stated herein, the court grants in part and denies in part defendants' motion for summary judgment.

I.

A.

In his complaint, Dellinger, who is Jewish, alleges that neither River North Correctional Center ("River North") nor the Virginia Department of Corrections ("VDOC") "provide[s] or makes available" the kosher meals required by his religious beliefs. Dellinger also states that the "VDOC didn't allow purchase of kosher meals" from the commissary during Passover. Finally, Dellinger alleges that "Jewish inmates are continuously denied religious services or are

---

[1] Dellinger filed a letter which the court construed as a motion to amend his complaint to specify that his claims are raised under RLUIPA. Docket No. 12. Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, a party may amend its pleading with the court's leave and the "court should freely give leave when justice so requires." Finding it in the interest of justice, the court grants Dellinger's motion to amend and, thus, will consider his claims under RLUIPA only.

habitually called late for services while all other religious groups are allowed services and even given extra time."

B.

In their motion for summary judgment, defendants assert the following facts. The Common Fare diet is provided at River North and other VDOC facilities and is designed to meet all known religious dietary restrictions, including those of the Jewish faith. No pork or pork derivatives are used in any Common Fare food and all foods purchased and used for the Common Fare diet (except fruits and vegetables) are consistent with certified "kosher" by a recognized Orthodox Standard, such as "U," "K," or "CRC." Further, the storage, preparation, serving, and cleaning of the kitchen and trays are compliant with all kosher requirements.

On January 26, 2015, the Chief of Corrections Operations for the VDOC issued a memorandum to the Wardens and Superintendents of VDOC facilities about the Passover observance for 2015, which occurred from April 4th through April 11th. The memorandum explained that menu modifications would be made to the Common Fare and Master Menus for inmates observing Passover in 2015.[2] Dellinger participated in Passover in April 2015 at River North, and he ate the Common Fare Passover menu.

In addition to the Common Fare Passover menu, inmates were permitted to purchase certain "Kosher for Passover" foods from the commissary.[3] Inmates who registered to observe Passover and who were on the pass list for the faith groups authorized to observe Passover could order the "Kosher for Passover" items from the commissary by using forms that were distributed

---

[2] For example, the Passover meal from the Common Fare menu is free of leavened food items, legumes, and grains, and matzah is substituted for leavened food items.

[3] The "Kosher for Passover" food items approved for the 2015 Passover observance at River North included: kosher matzah, kosher chocolate, macaroons, and gefilte fish. Lower security facilities could also choose from three other options, all of which required use of a microwave to prepare. Inmates at River North are not allowed to use microwaves due to the safety and security concerns of being a Security Level 4 facility.

to them on January 16, 2015. The deadline to purchase "Kosher for Passover" food from the commissary was February 25, 2015. Dellinger did not submit an order.

Defendants state that all religious programs at River North are scheduled for one hour on Fridays and that no program receives more than one hour. Sometimes programs may be called late or dismissed early due to institutional needs, such as lockdowns, staff shortages, or internal incidents. If something conflicts with a program schedule, staff does not adjust the schedule because the scheduling change would affect other areas and facility needs, such as meals and offender count. A program may be cancelled when offender movement is not permitted, such as during a lockdown or when there is a staff shortage. At River North, Jewish services are held in the gymnasium on Fridays from 9:15 a.m. to 10:15 a.m. From January to August 27, 2015, Jewish services were held on all but five Fridays. According to the roster, Dellinger attended all but one Friday service.

C.

Dellinger did not respond to the motion for summary judgment regarding his Passover commissary food claim and his religious services claim. In his response, however, he does take issue with defendants' assertion that "the storage, preparation, serving, and cleaning of the kitchen and trays are compliant with all kosher requirements."

Dellinger argues that although the Common Fare diet includes several kosher foods, the foods are all "rendered unkosher due to handling, preparation," and River North's unkosher kitchen. Dellinger states that he "adheres to the Jewish Laws of Kashrut (kosher dietary laws)," a "required tenet" of his beliefs. Dellinger explains that Kashrut "means fit or acceptable and goes beyond what foods can and cannot be eaten," it "also applies to preparation, handling, [and] exposure to unkosher foods, surfaces, utensils, pots, pans, steamers, ovens, dishwashers, etc." Dellinger states that "if a kosher food is prepared in a[n] unkosher kitchen and without kosher

3

certification, then the kosher food becomes unkosher . . . ." Dellinger believes that the kitchen at River North has never been certified kosher.

Dellinger also explains why he believes the utensils, appliances, serving trays, drinking cups, drink dispensers, eggs, and milk at River North are not kosher. He argues that although River North has a separate area to prepare Common Fare trays, he is not served kosher meals. Dellinger has submitted affidavits with regard to the preparation, serving, and cleaning of trays and glasses. He has personally observed Common Fare trays stacked together with general population trays causing cross contamination. Three other inmates have observed Common Fare trays served through contaminated tray slots. Inmates also state that the Common Fare trays and cups are intermingled with the general population trays and cups after use. This contaminates the Common Fare trays and cups, and they cannot become kosher again through a washing in the same dishwasher.

II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Shaw v. Stroud*, 13 F.3d 791,

798 (4th Cir. 1994). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that" the burden is "in furtherance of a compelling governmental interest[] and is the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-1(a). A substantial burden on religious exercise occurs when a government, through act or omission, "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). The plaintiff bears the initial burden of establishing that the government's actions substantially burdened his exercise of religion. *Krieger v. Brown*, 496 F. App'x. 322, 324 (4th Cir. 2012); *Adkins v. Kaspar,* 393 F.3d 559, 567 n.32 (5th Cir. 2004); *Civil Liberties for Urban Believers v. Chicago,* 342 F.3d 752, 760 (7th Cir. 2003). In conducting the substantial burden inquiry, the plaintiff "is not required . . . to prove that the exercise at issue is required by

5

or essential to his religion." *Krieger*, 496 F. App'x at 325 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)). Nevertheless, "at a minimum the substantial burden test requires that a . . . plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007) (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). No substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007). Once a plaintiff produces *prima facie* evidence to support the claim that the challenged practice or law substantially burdens the plaintiff's exercise of religion, the government bears the burden of persuasion on whether the practice or law is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-2(b). RLUIPA does not authorize an award of damages against state officials sued in their individual capacities, *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009), and the Eleventh Amendment bars a recovery of damages under RLUIPA against state officials sued in their official capacities, *Madison v. Virginia*, 474 F.3d 118, 133 (4th Cir. 2006).

With regard to his Common Fare diet claim, Dellinger alleges that the failure to provide or make available kosher meals imposes a substantial burden on his religious beliefs. Defendants argue that the food provided in the Common Fare diet meets all known dietary restrictions of the Jewish faith. Dellinger argues that the food, although purchased kosher, is rendered unkosher by the way it is stored, prepared, cooked, handled, and served. In light of the affidavits filed by Dellinger and his better explanation of his claim in response to the motion for summary judgment, the court finds that defendants' motion for summary judgment inadequately

addresses Dellinger's claim. There are genuine issues of material fact in dispute. Accordingly, the court denies defendants' motion for summary judgment as to this claim.

With regard to Dellinger's Passover commissary claim, Dellinger has not demonstrated that the defendants have substantially burdened his religious beliefs. Dellinger alleges that the VDOC did not allow purchase of kosher meals during Passover and that he "need[s] kosher meals for the 8 days of Passover." Defendants state that kosher matzah, kosher chocolate, macaroons, and gefilte fish were all available for order from the commissary for Passover. Dellinger does not dispute that order forms were distributed or that he did not place an order for these food items. Accordingly, the court finds that Dellinger has not met his burden, and, thus, defendants' motion for summary judgment is granted as to this claim.

With regard to his religious services claim, Dellinger again fails to demonstrate a substantial burden on his religious beliefs. Dellinger alleges that Jewish inmates are "continuously denied religious services or are habitually called late for services . . . ." Defendants state that Jewish services were held on all but five Fridays between January and August 27, 2015. Dellinger does not allege that missing the five cancelled services put substantial pressure on him to modify his behavior and violate his beliefs. Thus, Dellinger has not met his burden, and, therefore, the court grants defendants' motion for summary judgment as to this claim.

IV.

For the reasons stated herein, defendants' motion for summary judgment is granted in part and denied in part.[4] Dellinger's only remaining claim concerns the failure to provide or make available kosher meals.[5]

---

[4] Dellinger also filed two motions to consolidate in which he asks that this case be consolidated with four other cases raising the same or similar claims. The Fourth Circuit has held that a district court has "broad discretion under F[ederal] R[ule of] Civ[il] P[rocedure] 42(a) to consolidate causes pending in the same district." *A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Corp.*, 559 F.2d 928, 933 (4th Cir. 1977). In making this decision,

7

An appropriate order will be entered.

Entered: March 22, 2016.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

the court should examine several factors, including "whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues . . . ." *Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982), *rev'd on other grounds*, 712 F.2d 899 (4th Cir. 1983). The court cannot make this determination until the record is more fully developed and, therefore, denies Dellinger's motions to consolidate.

[5] In his complaint, Dellinger names Mark Engieke, Director of Food Services, as a defendant; however, in defendants' motion for summary judgment, counsel for the defendants notes that the last name of the Director of Food Services is actually Engelke and asks the court to update the docket to reflect the correct spelling. Accordingly, the Clerk is DIRECTED to update the docket with the correct spelling of the name of the Director of Food Services.